## O'BRIEN BROS., Inc., v. DIRECTOR GENERAL OF RAILROADS et al.

(District Court, S. D. New York.  December 29, 1922.)

**Shipping ☞58(2)—Evidence held not to show injury to barge was received from stevedore's negligence.**

> On libel for injuries to a barge, in which the bailee of the barge filed petition over against a stevedore, evidence *held* not to sustain the burden of proof resting on the bailee to show that the cause of the injury was the stevedore's negligence, so that the bailee must pay the loss.

In Admiralty.  Libel by O'Brien Bros., Inc., against the Director General of Railroads, the Spencer & Son Corporation, and the Associated Operating Company, in which the Director General filed a petition over against the Associating Operating Company.  Decree rendered against the Director General.

James A. Martin, of New York City, for libelant.
Leo J. Curren, of New York City, for Director General of Railroads.
Edgar Bromberger, of New York City, for Spencer & Son Corporation.
Carl G. Stearns, of New York City, for Associated Operating Co.

LEARNED HAND, District Judge.  Like all these cases, there is very little on which to make any finding with certainty; but I think, on the whole, that the Director General has not proved his petition over.  He has the burden of proof over against the stevedore, and while I have a great deal of doubt as to what happened, I do not think, on the whole, that a case has been made out.  The only evidence we have is from a very illiterate woman, who could give no intelligent account of just what happened.  We gather from her that there was some commotion, and some rails got displaced and fell down on the deck, and at once thereafter her husband, who was the bargee, and who seems to have disappeared on the eve of trial, called her attention to the hole in the deck, and said, "Look; my boat is broken."  She has a vague idea that, as one of the rails was being pulled up by the fall, it caught and, as she said, "lifted" some of the other rails.  I do not believe, whatever happened, that it did lift any of the rails on the pile.  I do not believe any one thinks that.  In the first place, there was nothing on the rail which could have lifted up other rails, unless they were not piled parallel, which I do not believe.

Now, I think it is possible that one of those rails displaced some of the others, and that they fell on the deck.  I do not know, and I am in no position to make a finding on that.  I think it is among the possibilities, and, if they did, the other rails rattled down; they did not fall any great distance, because they could not have done so.  The piles were undoubtedly more or less pyramidical in their form, and, although the rails would not have fallen perfectly flat and parallel with the deck, their displacement would not naturally have been very great, and furthermore the weight of one rail falling on the deck would not be the weight of the whole rail.  It is very easy to see, therefore, that

it would be a very small proportion of its weight. I will not say that one rail may not have been enough to break a stringer; it certainly would, if it was a weak stringer. I doubt if it would break a 10x10 stringer, rattling down without a clean drop, as it must have done. Whether it would or not, I cannot see the possibility, under those circumstances, of breaking a 4-inch plank, which was 12 inches in width, and which had the supports of stringers which I suppose were 3½ feet between centers; that being the general make-up of these barges.

On the other hand, if, as the witnesses for the Associated Operating Company maintain, these scantlings, on which the whole weight of one of these piles rested, had been put between the crossbeams, so that the end of it bore on one stringer, and that that stringer had to carry all twelve feet, which Mr. Martin says it did, the only surprising thing is that it should have stood up at all. I have no means of knowing who is telling the truth. It may be that these witnesses from the Associated Operating Company, who have every motive to exonerate themselves, are fabricating when they say that they could not see the injury until the rails were taken off. But, on the whole, such probabilities as there are rather seem to me to corroborate them than the contrary.

Then comes up the question of how one should explain the claim made by the bargee. That can only be explained on the theory that he knew of the injury, wanted to lay it to some one, and found the handiest person after he had discovered it was the stevedore. I am afraid that that is a disposition which I must accept as not uncommon. For a long time I resisted it, but my experience in this court has forced me to believe that it is the sort of thing that one must be on the watch for. As I asked in the argument, Why should he have selected the stevedore? Well, I think that is explicable if, as a matter of fact, these rails were disturbed as Ella Turner says they were, and rattled down. If the bargee had an event like that on which to go, it would be so apt and convenient to his purposes that he might even have half persuaded himself that that is how the thing happened, because men, particularly men untrained in making inferences, get very quickly into a frame of mind where they believe what they wish. So I think that there is an explanation possible.

And then, finally, as in all these cases, I cannot help coming back to this consideration: Where the thing is clouded in the testimony of people whose word ought not to sway the fate of litigants, and where they are in conflict, as here, the man who has the burden is in difficulties. There is no denying that fact. He has got to overcome the inertia of the judge's mind, and I can only say that I am not convinced. I think, on the whole, the probabilities are with the stevedore, and I am not convinced of what the bailee asserts against the stevedore.

That being true, the bailee must pay the loss.